UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

HARRY BOLTON ERVIN, #482984,
        Petitioner,                                  No. 2:12-cv-294
vs.                                                     Hon R. Allan Edgar
                                                          United States District Judge
JEFFREY WOODS,
        Respondent.
_____/

**OPINION AND ORDER**

        Petitioner, Harry Ervin, currently confined at Chippewa Correctional Facility, requests habeas relief pursuant to 28 U.S.C. § 2254.  (Docket #6)  Ervin pleaded nolo contendere to assault with intent to commit murder and was sentenced to 30 to 90 years' incarceration.  Ervin argues that he is entitled to habeas relief because: (1) the trial court failed to adequately consider his mental health history and history of abuse in mitigating his sentence; (2) his judgment should include credit for jail time served; (3) ineffective assistance of trial counsel; and (4) ineffective assistance of appellate counsel.

        Respondent has filed an answer to the petition stating that the petition should be denied because one of the grounds is procedurally barred and three of the grounds are without merit.  (Docket #33)  Upon review and applying the AEDPA standards, this Court holds that grounds one, two, and four are without merit, and ground three is procedurally barred.  This Court concludes that Ervin is not entitled to habeas relief.

I.

        This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, 126 S. Ct. 2862 (June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court

unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001). A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harrington v. Richter*, 131 S. Ct. 770, 784–85 (2011) (citing with approval *Harris*, 212 F.3d at 943 n.1). Where the circumstances suggest that the state court actually considered the issue, including where a state court has issued a summary affirmance, the review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harrington*, 2011 WL 148587, at *9; *Harris*, 212 F.3d at 943. However, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

II.

Ervin argues that this Court should grant him relief because: (1) the trial court failed to adequately consider his mental health history and history of abuse in sentencing; (2) his judgment should include credit for jail time served; (3) ineffective assistance of trial counsel; and (4) ineffective assistance of appellate counsel. This Court reviews each argument in turn.

**A. Mental Health History and Abuse in Sentencing**

3

Ervin argues that the trial court failed to take into account his mental health and history of abuse in mitigating the length of his sentence. Although there is no constitutional right to individualized sentencing in non-capital cases, *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995), at sentencing the trial court was aware of Ervin's hospitalization in a behavioral ward. (Sentencing Tr. 23–24)   Additionally, at a motion for resentencing, the trial court reviewed its previous sentence and more thoroughly stated its reasons for not modifying the sentence based on these reasons. The trial court did consider Ervin's mental health and history of abuse when determining the sentence and then affirmed its original sentence, even with the addition of other evidence:

> The court does recall this case because it was an extremely violent criminal offense, and there was a plea of no contest and the Court had to read and review a written account of what occurred here to establish the factual basis to accept a plea of no contest. And, although the defendant and/or counsel may not like or may not agree with the sentence imposed, that does not mean that the Court did not consider the defendant's mental state. The Court, in fact, read over and reviewed the entirety of the pre-sentence investigative report prior to imposing sentence, prior to listening to allocution on the part of the defendant, to Defense counsel and to the Prosecuting Attorney. I did make inquiry at the time of sentencing whether or not all parties had read and reviewed the pre-sentence investigative report and whether or not there any additions or corrections that needed to be made to that report. In that report the, court reviewed the fact on page 1 that the defendant claimed he had suffered physical abuse by his father during his adolescent years. His father was an alcoholic, excuse me, used to physically beat and whip him all the time. The Court read and reviewed that and did consider that at the time of sentencing. Also, the claim on the second, page 2 of the report, that he had been using cocaine prior to committing the offense and different -- had been through different substance abuse treatment programs. Further, paragraph 3 on page 2 indicates that it should be noted the defendant - - after the defendant committed this criminal act, he tried to take his own life by using a razor to cut his wrist on both arms and his Achilles tendon on his left ankle. The Court read, understood, reviewed and considered that prior to imposing sentence. In the next paragraph it indicates that the defendant said that he has good mental health and was receiving no previous mental health treatment; however, the defendant states, after being arrested, while at the hospital, he was presa - - prescribed Prozac. And he was receiving a medication equivalent to Prozac in the jail, while being lodged in the jail.
>
> So, again, no one informed the Court that there were any additions or corruptions, or there was anything incorrect about that portion of the pre-sentence investigative report. The Court did consider, read and review that this pre-

sentence investigative report stated the defendant reports himself having good mental health and receiving no previous mental health treatment.

Further, on page 3, and the second paragraph down, it indicates, once again, that the defendant said he cut his wrist and ankle because he wanted to die. The Court read, reviewed and considered that statement, as well as the last paragraph on that page: after being released from the emergency room, slash, hospital, Mr. Harry Lonzo-Bolton Ervin was transported to the Berrien County jail, charged with several crimes.

Now, on page 9 of the report, under the heading "Health" - - under "Physical health" it says, health problems, none. The Court read and reviewed that. Under "Mental health" it says, health problems, none.

There was a discussion and the Defense counsel pointed out that the defendant had been hospitalized. And the Defense counsel indicated - and this is from my notes, I'm not reading from the transcript – but, at 14:01:14 the Defense counsel informed the Court that the defendant did everything he could do to take his live – he cut his wrist, his tendons and his ankle, and, for that reason, the Defense counsel request that the Court deviate downward from the guideline range. And the defendant told the Court that, during allocution, he lost his mind and feels now he has no reason to live. The Defense attorney went on further to indicate once again the Court should deviate from the guidelines in a downward departure because the defendant was hospitalized in the behavioral ward of Lakeland Hospital immediately after this happened, which would seem to confirm that he did – his word was – break, as he said, or, certainly he was despondent and had some kind of mental problem, so this was addressed, again, by Defense counsel on the record, not only what was addressed in the PSI report. And I noted on the record that he didn't mention that in the PSI report and that the PSI report indicates he had no previous mental health treatment, and there was nothing at the time of sentencing that indicated to the Court that he had any previous mental health treatment, and even as of today's date in the brief submitted by Defense counsel, or the report that is submitted here from the hospital, showing that the defendant had any prior history of mental health illness or treatment. He indicated he was depressed and had anxiety. I do note that it says that. And, it was noted on the record at the time of sentencing that there was no question the defendant was hospitalized in Lakeland, but it was for a short period of time; and the Defense attorney indicated that was correct.

So, I have had an opportunity to read over and review Defendant's Exhibit A, which is history on physical report of the defendant, and it was written by Dr. Sajja, and that indicates that the defendant indicated to a social worker that he had been depressed and had anxiety for a long time and was requesting help for that. And there's a history of drug abuse, which was noted in the PSI, and the Court did consider and review that. The doctor went on to indicate that the patient was quite angry, upset, argumentative, and agitated and was not engaging in an

5

> interview, basically was demanding and was sarcastic. Under mental health status the doctor indicates, from seeing for admission, it was noted the defendant to be alert, oriented to person, who was very angry, hostile, argumentative, irritable, says, paranoid, suspicious and he seemed to be blaming everybody for his predicament at that point. His affect, mood and behavior did not really indicate any depression, and he seemed to be more, gamy than anything else at that point.
>
> His history indicates that he is homeless and is quite like - - and it is quite likely that he's trying to get as many solutions as he can at this point. He is not psychotic nor any major mood disorder seen. Personality issues are definitely evident with a history of a lot of antisocial activity in the past. Motivation is questionable. Diagnosis: depression, nos/drug addiction, antisocial personality.
>
> So, after review of this report by Dr. Sajja, the Court is not convinced that there is an appropriate reason or there are significant issues of a mental health issue or problem that the Court was unaware of at the time of sentencing that need to be addressed or change the Court sentence from what was originally imposed.
>
> On page 5 of the defendant's brief, the last paragraph, counsel indicates, a trial court may, and I am underlining and stressing the may, consider defendant's need for mental health treatment in determining an appropriate sentence. It cites People v Dean. And, even in counsel's own brief, it doesn't indicate shall, but may.
>
> This Court, in fact, did consider the information regarding the defen - - defendant's mental health at the time of sentencing.
>
> In this case counsel argued that there was inaccurate information that the Court relied upon at the time of sentencing regarding his mental health condition. Inaccurate, I would argue this point is different from and can be distinguish from, perhaps, incomplete. I'm not even sure that what the Court had in front of it at that time was incomplete. What I'm reading here in Exhibit A truly does not differ much in any stretch of the imagination from the information the Court had available, if anything else, it probably just bolters the information and the understanding the Court had of the defendant's mental health state at the time the offense was committed. And, once again, I did consider that all - - all that information. I'm now considering Exhibit A in conjunction with that, and find that the sentence was appropriate, it was proportional, it was within the guideline range. I did consider, and continue at this time in making this decision to consider all the information available to me regarding the defendant's mental health state, and I'm not convinced that he is entitled to re-sentencing for the reasons indicated or requested by counsel. So re-sentencing on that ground is denied.

(Motion for Resentencing Tr. at 18–22) Since Petitioner has no federal right to an individualized sentence, this ground presents an issue of state law only. Petitioner has not alleged grounds for

the Court to conclude that this is one of those rare instances where an alleged state-law sentencing error was so egregious that it led to a fundamentally unfair outcome. *See Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). Moreover, the state court considered this issue and came to an objectively reasonable conclusion. This is a non-cognizable claim of state law and Ervin is not entitled to relief.

## B. Credit for Jail Time Served

Next, Ervin argues that he should have received credit for jail time served after he committed the current offense. When Ervin committed the assault with intent to murder he was on parole for a previous offense, and his jail time was for the violation of parole not for time while awaiting trial. How a state determines whether time served for parole violations applies backward to the violation or forward to a fresh offense is a matter of state law. *Cox v. Maxwell*, 366 F.2d 765, 766–67 (6th Cir. 1966). In any event, the state considered this issue as well:

> Now, issue two indicates, with the credit for time served. And the Court did not grant the defendant any credit for time served as it was a mandatory consecutive sentence. The defendant was at - - on parole at the time that this Court sentenced him. And the Court has reviewed the information in Defense counsel's brief and also People v Stead, S-T-E-A-D, found at 270 Mich. App. 550, a 2006 case. In that particular case the defendant was on parole at the time that he was sentenced and the PSI recommended the defendant receive credit for 159 days time already served. So the sole issue on appeal is whether the trial court erred in declining to apply that time against the sentence for the defendant in the case, and, it was determined by the Court of Appeals there that the Court did not err, that no credit for time served was allowed. And it spoke about reliance on the case that is cited by Defense counsel, Wayne County Prosecutor v Department of Corrections, found at 451 Mich. 569, a 1969 case. And this case indicates that credit is not available to a parole detainee for time spent in jail attendant to a new offense because, quote, bond is neither set nor denied when a defendant is held in jail on a parole detainer, unquote. And that's page 707 of People v Seiders, S-E-I-D-E-R-S, 262 Mich. App. 702.
>
> Now, I understand and appreciate the fact that the case law in this matter is being reviewed, this issue is preserved for the defendant, and it may be, in fact, that the Court of Appeals will decide differently than the - - Supreme Court will decide differently than the Court of Appeals did here in Michigan in this Stead case. But, at this juncture, the Court is going to follow on the ruling in Stead and I will not grant the defendant any credit for time served because he was on parole; again, that issue has been preserved, okay.

7

(Motion for Resentencing Tr. at 22–23) Moreover, this is not a rare instance where an alleged state-law sentencing error was so egregious that it led to a fundamentally unfair outcome. *See Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. 2005) (citing *Bowling*, 344 F.3d at 521 (6th Cir. 2003)). Ervin is not entitled to relief on this claim.

**C. Ineffective Assistance of Trial and Appellate Counsel**

Ervin takes issue with the performance of his trial and appellate counsel, specifically that his trial counsel should have filed an insanity defense instead of the nolo contendere plea and that his appellate counsel should have raised this issue during his direct appeal. The state of Michigan argues that the claim of ineffective assistance of trial counsel is procedurally defaulted because it was not raised on direct appeal. In response to a motion for post-conviction relief, the trial court denied this claim because he failed to raise it on direct appeal. These failures generally result in procedural default. *See Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003). The claim of ineffective assistance of trial counsel is procedurally defaulted.

With respect to Ervin's claim of ineffective assistance of appellate counsel, this Court is obligated to deferentially review the state courts conclusions, not to review anew the issue of ineffective assistance of appellate counsel. Ordinarily, claims of ineffective assistance of counsel are subject to *Strickland's* two-part test: that the lawyer provided deficient counsel and that the defective representation prejudiced the outcome. 466 U.S. 668, 687 (1984). Specific to appellate counsel, an appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

8

The Michigan courts use an analogous standard for claims of ineffective assistance of counsel, which were applied to Ervin's claims of ineffective trial and appellate counsel:

> Defendant claims that his trial counsel was ineffective for failing to raise an insanity defense, and that his appellate counsel was ineffective for failing to raise that issue on appeal. In order to establish that his appellate counsel was ineffective for failing to raise the instant issue in the original appeal, the defendant must show that counsel's performance "fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *Pickens, supra,* at 303. While not insurmountable, this burden is "highly demanding." *Reed*, at 390. Further, the reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard is highly deferential. *Strickland,* at 689; *Kimmelman v Morrison,* 477 US 365, 381; 106 S Ct 2574; 91 L Ed 2d 305 (1986).
>
> Under the deferential standard of review, appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not ineffective assistance. *Jones v Barnes,* 463 US 745, 752; 103 S Ct 3308; 77 L Ed 2d 987 (1983). Failure to assert all arguable claims is not sufficient to overcome the presumption that counsel functioned as a reasonable appellate attorney in selecting the issues presented. *Reed*, at 391. The question is whether a reasonable appellate attorney could conclude that these issues were not worthy of mention on appeal. *Id.*
>
> Defendant specifically argues that his appellate counsel was ineffective for failing to raise a "dead-bang winner" argument on appeal. Some federal appellate courts and courts of other jurisdictions have recognized that an appellate advocate may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner" argument, even though counsel may have presented strong but unsuccessful claims on appeal. *Page v United States*, 884 F.2d 300, 301 (7th Cir 1989). A "dead-bang winner" issue has been defined as an issue which was obvious from the trial record, *and* one which would have resulted in a reversal on appeal. *US v Cook*, 45 F3d 388 295 (10th Cir 1995) (citing *Matire v Wainwright,* 811 F2d 1430, 1438 (11th Cir 1987). Notably, the "dead-bang winner" doctrine, while referred to in unpublished cases of the Sixth Circuit, has not been adopted by Michigan appellate courts or the Sixth Circuit Federal Court of Appeals. Thus, the appropriate standard of review is whether it was objectively reasonable for appellate counsel to not have raised the insanity defense argument. Regardless of whether review is by the "dead-bang winner" standard or the objectively reasonable standard, an analysis of the merits of Defendant's claim of insanity shows that appellate and trial counsel were not ineffective for failing to raise the issue.
>
> In 1843, the English House of Lords formulated a rule to fix criminal responsibility in England that has come to be known as the *M'Naghten Rule*, or

the "right from wrong test." The *M'Naghten* rule asked whether, at the time of committing the criminal act, the accused party was laboring under such a defect of reason, from disease of the mind, as not to know the nature or quality of the act he was doing, or, if he did know what he was doing, that he did not know what he was doing was wrong. *People v Martin*, 386 Mich 407, 415; 192 NW2d 215 (1971), quoting *Daniel M'Naghten's Case*, (HL 1843) 10 C1.Fin. 200 (8 Eng.Rep. 718), 722 (1843). In many American jurisdictions, this test was adopted with modifications. For years, Michigan followed the *Durfee* test, which was based on the *M'Naghten* rule. The *Durfee* test added a volitional component to the *M'Naghten* rule, asking whether the accused's mental disease or abnormality prevented him from controlling his actions. In other words, the inquiry became whether the accused lacked the substantial capacity to appreciate the wrongfulness of his conduct and, if he did, whether he lacked the ability to conform his conduct to the requirements of the law. *People v Crawford*, 89 Mich App 30; 279 NW2d 560 (1979).

Since 1975, however, when 1975 PA 180 was enacted, the use of the insanity defense has been governed by statute. Our legislature has enacted a comprehensive statutory scheme that sets forth the requirements for a defense based mental illness,[1] today codified in MCL 768.21a. Legal insanity is an affirmative defense requiring proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked "substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MCL 768.21a(1). Mental illness or being mentally retarded does not otherwise constitute a defense of legal insanity. *Id.* Further, an individual who was under the influence of voluntarily consumed alcohol or controlled substances at the time of the alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances. MCL 768.21a(2). The defendant has the burden of proving the defense of insanity by a preponderance of the evidence.

The definitions of mental illness and insanity, for the purposes of avoiding criminal responsibility, must come from law. *People v Drossart*, 99 Mich App 66; 297 NW2d 863 (1980). "Legal insanity," by definition, must be the result of a mental illness. *People v Clark*, 172 Mich App 1; 432 NW2d 173 (1988).

MCL 330.1100d(3) defines "serious mental illness" as:

---

[1] Our Supreme Court has ruled that by the Legislature's enactment of MCL 768.21a, it has created an "all or nothing" insanity defense, meaning that there is no defense of diminished capacity in the State of Michigan. *Carpenter, infra*, at 237. The alternative for defendants who are mentally ill or retarded, but not legally insane, is to plead "guilty but mentally ill," which results in sentencing in the same manner as for any other defendant committing the same offense, subject to psychiatric evaluation and treatment. MCL 768.36(3). Thus, mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent. *Carpenter*, 464 Mich at 238.

10

> "a diagnosable mental, behavioral, or emotional disorder affecting an adult that exists or has existed within the past year for a period of time sufficient to meet diagnostic criteria specified in the most recent diagnostic and statistical manual of mental disorders published by the American psychiatric association and approved by the department and that has resulted in functional impairment that substantially interferes with or limits 1 or more major life activities. Serious mental illness includes dementia with delusions, dementia with depressed mood, and dementia with behavioral disturbance but does not include any other dementia unless the dementia occurs in conjunction with another diagnosable serious mental illness. The following disorders also are included only of they occur in conjunction with another diagnosable serious mental illness: (a) A substance abuse disorder; (b) A developmental disorder; (c) A "V" code in the diagnostic and statistical manual of mental disorders."

"[B]y enacting a comprehensive statutory scheme setting forth the requirements for and the effects of asserting a defense based on either mental illness or mental retardation, the Legislature has signified its intent not to allow a defendant to introduce evidence of mental abnormalities short of legal insanity to avoid or reduce criminal responsibility by negating specific intent." *People v Carpenter*, 464 Mich 223, 226; 627 NW2d 276, 277 (2001).

When Defendant was sentenced, he expressed remorse for what he did, embarrassment for hurting the victim, and indicated that he hoped for forgiveness. (S Tr., pp 20-22). This shows that Defendant, at a minimum, had an appreciation of the wrongfulness of his conduct.

Nor has Defendant made a prima facie showing that due to mental illness he was unable to conform his behavior to the confines of the law on June 3, 2008. The record indicates that appellate counsel was in possession of the report from Lakeland Hospital, prepared in connection with Defendant's hospitalization for slitting his wrists the day the underlying offense was committed. In that report, Dr. Sajja indicates that Defendant was alert and oriented, was not psychotic and had no major mood disorder, but instead appeared "to be more gamey than anything." Appellate counsel used this report in moving for resentencing. Because Dr. Sajja indicates that there was no mental illness, it is unlikely that Defendant had a successful case for an insanity defense. Considering this report, it is clear that, based on the record, an insanity defense is not a "dead-bang winner" issue, or one which is apparent from the record and would have resulted in a reversal on appeal. Contrarily, because of that report and its likely impact on the viability of an insanity defense, it was objectively reasonable for appellate counsel to not have raised the issue on appeal. Therefore, because appellate counsel was not ineffective for failing to raise this issue on appeal, Defendant has

> not shown good cause under MCR 6.508(D)(3)(a), and Defendant's motion is denied.
>
> Because the record is sufficient to evaluate Defendant's claims, a *Ginther* hearing is not necessary. The motion for a *Ginther* hearing is therefore denied.

(Relief from Judgment Order at 9–13)  The Michigan court's review of these claims is thorough and this Court will not second guess it. Whether the claim that trial counsel was ineffective is defaulted this claim lacks merit. All indications, including multiple reviews of this claim by the Michigan courts, are that Ervin is not insane. Because his trial counsel was not ineffective, his appellate counsel was not ineffective for failing to raise this issue on appeal. Ervin has not met the first prong of *Strickland*: that his appellate counsel was deficient in his performance. Ervin has not put forth any new facts that would change this outcome. Ervin fails to show that his trial and appellate counsels provided deficient counsel.

### III.

The Court holds that Ervin's claims are without merit. In addition, if petitioner should choose to appeal this action, the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. The Court examined each of Petitioner's claims under the *Slack* standard and concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.

For the same reasons that the Court has dismissed this action, the Court will certify pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24 that any appeal by petitioner from the Court's decision and judgment would be frivolous and not taken in good faith. Therefore, any application by Petitioner for leave to proceed in forma pauperis on appeal is hereby DENIED.

Pursuant to Rule 5, Ervin's motion for post-conviction relief pursuant to 28 U.S.C. § 2255 is **DENIED AND DISMISSED WITH PREJUDICE**. A judgment consistent with this Opinion and Order will be entered.

**SO ORDERED.**

Dated:     10/27/2014                    */s/ R. Allan Edgar*
                                         R. Allan Edgar
                                         United States District Court Judge